Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW CHEN, derivatively on behalf of CLOUDERA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THOMAS J. REILLY, JIM FRANKOLA, MICHAEL A. OLSON, MARTIN COLE, ROBERT BEARDEN, PAUL CORMIER, PETER FENTON, KIMBERLY L. HAMMONDS, KEVIN KLAUSMEYER, PING LI, ROSEMARY SCHOOLER, STEVEN SORDELLO and MICHAEL A. STANKEY, <br><br> Defendants, <br><br> and <br><br> CLOUDERA, INC., <br><br> Nominal Defendant. | Case No.: <br><br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br><br><br><br> **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

Andrew Chen ("Plaintiff"), by his undersigned attorneys, derivatively and on behalf of Nominal Defendant Cloudera, Inc. ("Cloudera" or the "Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Thomas J. Reilly, Jim Frankola, Michael A. Olson, Martin Cole, Robert Bearden, Paul Cormier, Peter Fenton,  Kimberly L. Hammonds, Kevin Klausmeyer, Ping Li, Rosemary Schooler, Steven Sordello and Michael A. Stankey (collectively, the "Individual Defendants," and together with Cloudera, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Cloudera, unjust enrichment, waste of corporate assets, and violations of Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). As for Plaintiff's complaint against the Individual Defendants, he alleges the following based upon personal knowledge as to his and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls, and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cloudera, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Cloudera's directors and officers from April 28, 2017 through the present (the "Relevant Period").

2.      Cloudera is a software company that specializes in providing data management, machine learning and advanced analytical tools to businesses.

3.      The Company has two main revenue segments: (i) subscriptions; and (ii) services. The primary source of revenue is from subscriptions. For the 2019 fiscal year, approximately 85% of the Company's total revenue came from subscriptions.[1]

---

[1] Cloudera's fiscal year ends on January 31 of the calendar year. This means that Cloudera's 2019 fiscal

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.      The company was co-founded by Defendant Michael A. Olson ("Olson") in 2008. Defendant Olson was the Company's original Chief Executive Officer ("CEO") until 2013, when Defendant Thomas J. Reilly ("Reilly") was appointed as CEO of the Company. Defendant Olson then became the Chief Strategy Officer ("CSO") of Cloudera in June 2013.  Since 2008, Cloudera continued to grow until it eventually became one of the largest companies of its kind in the world. As of the end of the fiscal year 2017, on January 31, 2017, Cloudera stated that they had 500 of the "Global 8000" companies as customers. According to Cloudera's registration statement for its Initial Public Offering ("IPO") filed with the SEC on a Form S-1 on March 31, 2017, "[Cloudera] refer[s] to the largest 8,000 corporate enterprises globally as the Global 8000…the top 2,000 enterprises in the Global 8000 are based on the FORBES Global 2000 ranking…[t]he remainder of the Global 8000 constituents is based on entities listed in Data.com as having the highest annual revenue, excluding those that are listed in the FORBES Global 2000."

5.      In April 2017, Cloudera went public in an IPO. The Company sold 17.25 million shares of common stock, including the exercise of the underwriters' overallotment option.[2] The shares were sold at $15 per share. The IPO raised over $258 million in gross offering proceeds.

6.      In documents related to the IPO, Company filings with the SEC, press releases, and earnings calls throughout the Relevant Period, the Individual Defendants led the public to believe that the Company was extremely successful and on the verge of business and customer growth, notably with the Global 8000 and other substantial consumers.

7.      In particular, the Individual Defendants led the public to believe that the Company's "land and expand" business model was working, and succeeding, and that Cloudera was on its way to consistent positive cash flow. The Individual Defendants proclaimed that Cloudera was an ever-growing, successful software company with new advancements that would become more profitable and reach a larger customer base throughout the predictable future.

---

year ended on January 31, 2019.
[2] Referring to an option typically provided to underwriters that allows for the sale of additional shares that a company intends to issue in an IPO or follow-up offering.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8.      At the same time, it was slowly revealed that the Company was not as successful as the Individual Defendants led on in the Company's SEC filings, press releases and earnings calls.

9.      In April 2018, the Company released disappointing financial results for its fourth quarter and fiscal year 2018. Although Defendant Reilly claimed, that "Cloudera is well positioned to continue to grow" and that he "see[s] nothing that gives [him] concern about the market…", the results discouraged many shareholders.

10.      As a result of the disappointing financial results, Cloudera's common stock fell $8.95 on abnormally high volume, from closing on April 3, 2018 at $22.24 to close on April 4, 2018 at $13.29.

11.      On October 3, 2018, the Individual Defendants announced that Cloudera had entered into a merger with data management company, Hortonworks, Inc. ("Hortonworks") (the "Hortonworks Merger"). The same day, the Company issued a press release announcing the Hortonworks Merger (the "Merger Press Release"). The Merger Press Release touted how beneficial the Hortonworks Merger would be for Cloudera and went on to claim how much the Hortonworks Merger would accelerate growth and revenues for Cloudera. The Merger Press Release further promised that the close of the Hortonworks Merger in January 2019 would result in the "world's leading next generation data platform provider, spanning multi-cloud, on-premises and the Edge."

12.      The Individual Defendants continued with this facade up until and even after the close of Hortonworks Merger. In March 2019, the Company announced its fiscal year 2019 fourth quarter and full fiscal year 2019 financial results. In this announcement, the Company provided disappointing financial prospective for the first quarter of fiscal year 2020 (the first quarter after the close of the highly valued Hortonworks Merger). Further, Defendant Jim Frankola ("Frankola") noted that the Company would have to take a $62 million "haircut." Nevertheless, the Individual Defendants still continued to proclaim that the Company was successful. For example, Defendant Frankola stated that "we feel very strong the market is moving in our direction around the hybrid multi-cloud, and then our functionality is best-in-class."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

13.     As a result of the disappointing financial results, Cloudera's common stock, once again, fell $2.90 on abnormally high volume, from closing on March 13, 2019 at $14.61 to close on March 14, 2019 at $11.71.

14.     On June 5, 2019, the Company issued a press release and hosted an earnings call to discuss the first quarter of the fiscal year 2020 with investors. Again, these numbers disappointed shareholders and the public. During the earnings call, the Individual Defendants announced, essentially, no growth in the Company's customer base. Cloudera was losing business, the "land and expand" plan was failing, and the Company spent an astounding $119 million in marketing and sales during the quarter. Analysts reacted very strongly to the disappointing results. One analyst even downgraded the Company stock from a "Strong Buy" rating to "Hold."

15.     On this news, Cloudera's common stock fell $3.59 on abnormally high volume, from closing on June 5, 2019 at $8.80 to close on June 6, 2019 at $5.21.

16.     During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the Company's business and customer base. Specifically, the Individual Defendants improperly failed to disclose, *inter alia*, that: (1) Cloudera was experiencing extensive difficulty obtaining new customers willing to adopt its Hadoop-based platform; (2) as such, the Company needed to increase spending on sales and marketing; (3) Cloudera could not generate annual positive cash flows due to decreased growth opportunities; and (4) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

17.     The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct these false and misleading statements and omissions of material fact to the investing public.

18.     In response to the false and misleading statements disseminated during the Relevant Period, Cloudera's stock prices soared and were trading at record highs. Meanwhile, the Individual

Defendants were selling large quantities of their shares at artificially inflated prices, collecting millions of dollars in proceeds.

19.     During the Relevant Period, the Individual Defendants also breached their fiduciary duties by causing the Company to fail to maintain internal controls.

20.      Furthermore, during the Relevant Period, two of the Individual Defendants engaged in insider sales, netting proceeds of over $164.8 million.

21.     As a result of the Individual Defendants' misconduct, which has subjected Cloudera, its former CEO, and its Chief Financial Officer ("CFO") and its Co-Founder and CSO, to being named as defendants in a federal securities fraud class action lawsuit pending in the United States District Court for the Northern District of California (the "Securities Class Action"), the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, the losses from the waste of corporate assets, the losses due to the unjust enrichment of the Individual Defendants who were improperly over-compensated by the Company and/or who benefitted from the wrongdoing alleged herein, the Company will have to expend many millions of dollars.

22.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and the former CEO's, CFO's, and CSO's liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of Cloudera's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9 promulgated thereunder.

24.     Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

25.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

26.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

27.     The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation with its principle executive offices in this District, or he or she is an individual who has minimum contacts with this District to justify the exercise of jurisdiction over them.

28.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

29.     Venue is proper in this District because Cloudera and the Individual Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

30.     Plaintiff is a current shareholder of Cloudera common stock. Plaintiff has continuously held Cloudera common stock at all relevant times.

### Nominal Defendant Cloudera

31.     Cloudera is a Delaware corporation with its principal executive offices at 395 Page Mill Road, Palo Alto, California 94306. Cloudera's shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "CLDR."

### Defendant Reilly

32.     Defendant Reilly served as the Company's CEO and as a Company director since June 2013. According to a Company press release on June 5, 2019, Defendant Reilly resigned from CEO and as a member of the Company's board effective July 31, 2019.  According to the Company's Schedule

14A filed with the SEC on May 10, 2019 (the "2019 Proxy Statement"), as of April 30, 2019, Defendant Reilly beneficially owned 7,850,432 shares of the Company's common stock, which represented 2.8% of the Company's outstanding shares of common stock on that date. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Reilly owned approximately $87.4 million worth of Cloudera stock.

33.     For the 2019 fiscal year, Defendant Reilly received $7,526,057 in compensation from the Company. This included $426,554 in salary, $6,695,700 in stock awards, $385,000 in non-equity incentive plan compensation, and $18,803 in all other compensation.

34.     The Company's 2019 Proxy Statement stated the following about Defendant Reilly:

Thomas J. Reilly has served as a member of our board of directors and as out Chief Executive Officer since June 2013. Prior to Cloudera, Mr. Reilly served as Vice President and General Manager of Enterprise Security at Hewlett-Packard Company from November 2010 to May 2012. From December 2006 to May 2011, Mr. Reilly served as Chief Executive Officer of ArcSight, Inc., an enterprise security company, which HP acquired in 2010. Prior to ArcSight, from April 2004 to October 2006, Mr. Reilly was Vice President of Business Information Services for International Business Machines Corporation (IBM), a computer technology company, following its acquisition of Trigo Technologies, Inc., a product information company, where Mr. Reilly served as Chief Executive. Mr. Reilly currently serves on the boards of directors of several private companies. He previously served on the boards of directors of ArcSight from June 2008 to October 2010, of Eloqua, Inc. from June 2012 to February 2013, and of Jive Software, Inc. from April 2013 to June 2017. Mr. Reilly holds a B.S. in mechanical engineering from the University of California, Berkeley.

**Defendant Frankola**

35.     Defendant Frankola has served as the Company's CFO since October 2012. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Frankola beneficially owned 1,442,384 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Frankola owned approximately $16 million worth of Cloudera stock.

36.     For the 2019 fiscal year, Defendant Frankola received $4,106,235 in compensation from the Company. This included $363,051 in salary, $3,449,300 in stock awards, $293,884 in non-equity incentive plan compensation.

37.     The Company's 2019 Proxy Statement states the following about Defendant Frankola:

Jim Frankola has served as our Chief Financial Officer since October 2012. From June 2010 to September 2012, Mr. Frankola served as Chief Financial Officer of Yodlee, Inc. a data aggregation and data analytics platform company. Prior to Yodlee, Mr. Frankola served as Chief Financial Officer of Ariba, Inc., a software and information technology services company. Mr. Frankola has also held various other senior level financial and business management positions at several companies, including IBM and Avery Dennison Corporation. Mr. Frankola holds a B.S. in accounting from Penn State University and an M.B.A. from New York University Stern School of Business.

**Defendant Olson**

38.     Defendant Olson co-founded Cloudera in 2008. He has served as the Company's CSO since June 2013. Defendant Olson also served as Chairman of the Company's board from 2009 until his resignation in January 2019. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Olson beneficially owned 4,167,460 shares of the Company's common stock, which represented 1.5% of the Company's outstanding shares of common stock on that date. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Olson owned approximately $46.4 million worth of Cloudera stock.

39.     For the 2019 fiscal year, Defendant Olson received $4,251,672 in compensation from the Company. This included $282,500 in salary, and $3,827,172 in stock awards and $142,000 in non-equity incentive compensation.

40.     During the period of time when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Olson made the following sales of Company stock, and made no purchases of Company stock:

| Date | Shares | Value | Proceeds |
|---|---|---|---|
| 12/6/2018 | 27,619 | $  12.21 | $       337,227.99 |
| 11/28/2018 | 27,619 | $  12.04 | $       332,532.76 |
| 11/7/2018 | 27,619 | $  14.64 | $       404,342.16 |
| 10/24/2018 | 27,619 | $  13.84 | $       382,246.96 |
| 10/10/2018 | 27,619 | $  16.19 | $       447,151.61 |
| 9/26/2018 | 27,619 | $  17.95 | $       495,761.05 |
| 9/12/2018 | 27,619 | $  18.22 | $       503,218.18 |
| 8/29/2018 | 27,619 | $  14.74 | $       407,104.06 |

| 8/15/2018 | 27,619 | $ | 13.66 | $ | 377,275.54 |
| 8/1/2018 | 27,619 | $ | 13.76 | $ | 380,037.44 |
| 7/18/2018 | 27,619 | $ | 14.73 | $ | 406,827.87 |
| 7/5/2018 | 27,619 | $ | 13.92 | $ | 384,456.48 |
| 6/20/2018 | 27,619 | $ | 15.52 | $ | 428,646.88 |
| 6/6/2018 | 27,619 | $ | 17.18 | $ | 474,494.42 |
| 5/23/2018 | 27,619 | $ | 16.20 | $ | 447,427.80 |
| 5/9/2018 | 27,619 | $ | 15.88 | $ | 438,589.72 |
| 4/25/2018 | 27,619 | $ | 14.17 | $ | 391,361.23 |
| 4/11/2018 | 27,619 | $ | 12.99 | $ | 358,770.81 |
| 3/28/2018 | 27,619 | $ | 21.00 | $ | 579,999.00 |
| 3/14/2018 | 27,619 | $ | 20.19 | $ | 557,627.61 |
| 10/2/2017 | 587,288 | $ | 15.79 | $ | 9,273,277.50 |

Thus, in total, before the fraud was exposed, he sold 1,129,668 Company shares on inside information, for which he received approximately $17.8 million. His insider sales made with knowledge of material non-public information before the material misstatements and omissions were exposed demonstrate his motive in facilitating and participating in the scheme.

41.     The Company's Schedule 14A filed with the SEC on May 16, 2018 (the "2018 Proxy Statement") stated the following about Defendant Olson:

Michael A. Olson is our co-founder and has served as the Chairman of our board of directors since April 2009 and as our Chief Strategy Officer since June 2013. Previously, Mr. Olson served as our Chief Executive Officer from August 2008 to June 2013. Prior to Cloudera, from February 2006 to January 2008, Mr. Olson was Vice President of Embedded Technologies at Oracle Corporation, a software and data management developer. Beginning in 1998, Mr. Olson served as Vice President of Sales and Marketing of Sleepycat Software, Inc., a software company, and later served as Chief Executive Officer from 2000 until its acquisition by Oracle in 2006. Mr. Olson holds a B.A. in computer science and M.S. in electrical engineering and computer science from the University of California, Berkeley.

The board of directors believes that Mr. Olson possesses specific attributes that qualify him to serve as a director, including the perspective and experience he brings as our co-founder, Chief Strategy Officer and our former Chief Executive Officer.

**Defendant Cole**

42.     Defendant Martin Cole ("Cole") has served as a Company director since September 2014 and has served as Chairman of the Company's Board since January 3, 2019. Defendant Cole currently

serves as the Company's Interim CEO as of August 1, 2019. He also serves as a member of the Compensation Committee and the Nominating and Governance Committee. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Cole beneficially owned 115,077 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Cole owned approximately $1.28 million worth of Cloudera stock.

43.     For the 2019 fiscal year, Defendant Cole received $303,749 in compensation from the Company. This included $82,500 in fees earned or cash paid, and $221,249 in stock awards. In addition, Defendant Cole's "Interim CEO Agreement" provides for an extra monthly stipend of $40,000 and certain grants of restricted stock units, effective as of July 1, 2019.

44.     The Company's 2019 Proxy Statement stated the following about Defendant Cole:

*Martin Cole* has served as a member of our board of directors since September 2014. Prior to retiring in August 2014, Mr. Cole held various roles at Accenture plc, a professional services company, where he had worked since 1980. Most recently, Mr. Cole served as the Chief Executive of the Technology Group from 2012 to 2014, Chief Executive of the Communications, Media & Technology Operating Group from 2007 to 2012, Chief Executive of the Government Operating Group from 2004 to 2006, Managing Partner of the Outsourcing and Infrastructure Delivery Group from 2002 to 2004, and Partner in the Outsourcing and Government Practices Groups from 1989 to 2002, in addition to numerous other leadership positions during his tenure at Accenture. Mr. Cole currently serves on the boards of directors of the Western Union Company and Western Digital Corporation. Mr. Cole holds a B.A. in liberal arts from Dartmouth College and an M.A. in public affairs from the University of Texas at Austin.

The board of directors believes that Mr. Cole possesses specific attributes that qualify him to serve as a director, including his extensive experience as a former executive officer of a multinational management consulting, technology services and outsourcing company and his experience serving on the boards of directors of public companies.

**Defendant Bearden**

45.     Defendant Robert Bearden ("Bearden") has served as a Company director since January 2019 and previously served as the CEO, President, and as a director of the board of Hortonworks, which he co-founded, prior to the Hortonworks Merger. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Bearden beneficially owned 1,073,832 shares of the Company's common stock.

1
2
3

Given that the price per share of the Company's common stock at the close of trading on April 30, 2019

was $11.13, Bearden owned approximately $11.9 million worth of Cloudera stock.

4    46.    The Company's 2019 Proxy Statement stated the following about Defendant Bearden:

5
6
7
8
9
10
11
12
13

*Robert Bearden* has served as a member of our board of directors since January 2019.
Prior to this, Mr. Bearden co-founded Hortonworks, served as Hortonworks' Chief
Executive Officer from February 2012 until it merged with us in January 2019, as well as
from April 2011 to June 2011, and served as Hortonworks' President from June 2018 to
January 2019. Mr. Bearden also served as a member of the Hortonworks board from
April 2011 to January 2019. Mr. Bearden serves as on the board of directors of two
private software companies, Nlyte Software Inc., where he serves as the Chairman of the
board of directors, and Mark 43, Inc. From August 2009 to April 2011, Mr. Bearden
served as an Entrepreneur in Residence at Benchmark Capital, a venture capital firm.
From March 2008 to August 2009, Mr. Bearden served as President and Chief Operating
Officer of SpringSource Inc., a provider of open source software solutions that was
acquired by VMware, Inc. Mr. Bearden holds a B.S. in marketing from Jacksonville State
University. Mr. Bearden was appointed to our board of directors in compliance with the
Merger Agreement as a former director of Hortonworks.

14
15
16

The board of directors believes that Mr. Bearden processes specific attributes that qualify
him to serve as a director, including his operational and historical expertise gained as
President and Chief Executive Officer at Hortonworks, and as a senior executive at other
technology companies as well as his deep knowledge of the technology industry,
specifically the enterprise data industry.

17    **Defendant Cormier**

18
19
20
21
22
23
24

47.    Defendant Paul Cormier ("Cormier") has served as a Company director since January

2019 pursuant to the Hortonworks Merger. He previously served as a member of the board of

Hortonworks. Defendant Cormier also serves as a member of the Compensation Committee and the

Mergers and Acquisitions Committee. According to the 2019 Proxy Statement, as of April 30, 2019,

Defendant Cormier beneficially owned 229,674 shares of the Company's common stock. Given that the

price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13,

Cormier owned approximately $2.5 million worth of Cloudera stock.

25    48.    The Company's 2019 Proxy Statement stated the following about Defendant Cormier:

26
27
28

*Paul Cormier* has served as a member of our board of directors since January 2019. Prior
to this, Mr. Cormier served on the Hortonworks board from October 2011 until it merged
with us in January 2019. Mr. Cormier has served as President, Products and Technologies
of Red Hat, Inc., a provider of open source software solutions, since April 2008 and

served as Executive Vice President, Engineering from May 2001 to April 2008. From March 1999 to May 2001, Mr. Cormier served as Senior Vice President, Research and Development at BindView Development Corporation, a network management software company. From June 1998 to March 1999, Mr. Cormier served as Chief Technology Officer for Netect Internet Software Company, a network security vendor. From January 1996 to June 1998, Mr. Cormier first served as Director of Engineering, Internet Security and Collaboration Products and then as Senior Director of Software Product Development, Internet Security Products for AltaVista Internet Software, a web portal and internet services company. Mr. Cormier served on the board of directors of SolarWinds, Inc., an IT management software provider, from July 2014 until its acquisition by Silver Lake Partners and Thoma Bravo, LLC in February 2016. Mr. Cormier holds a B.S. in business administration from Fitchburg State College and an M.S. in software development and management from the Rochester Institute of Technology. Mr. Cormier was appointed to our board of directors in compliance with the Merger Agreement as a former director of Hortonworks.

The board of directors believes that Mr. Cormier processes specific attributes that qualify him to serve as a director, including his significant operational expertise gained as a senior executive at leading technology companies as well as his knowledge of the technology industry generally and of open source solutions specifically.

**Defendant Fenton**

49.     Defendant Peter Fenton ("Fenton") has served as a Company director since January 2019 pursuant to the Hortonworks Merger. He previously served as a member of the board of Hortonworks. Defendant Fenton also serves as Chair of the Mergers and Acquisitions Committee and as a member of the Audit Committee and the Compensation Committee. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Fenton beneficially owned 8,745,234 shares of the Company's common stock, which represented 3.2% of the Company's outstanding shares of common stock on that date.[3] Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Fenton owned approximately $97.3 million worth of Cloudera stock.

50.     The Company's 2019 Proxy Statement stated the following about Defendant Fenton:

---

[3] These shares consist of (a) 80,688 shares held by Defendant Fenton, (b) 395,019 shares held by Benchmark Capital Partners VI, L.P. ("BCP VI"), as nominee for BCP VI, Benchmark Founders' Fund VI, L.P. ("BFF VI"), and (c) 8,269,527 shares held by Benchmark Capital Partners VII, L.P. ("BCP VII"), as nominee for BCP VII, Benchmark Founders' Fund VII, L.P. ("BFF VII"). Benchmark Capital Management Co. VI, L.L.C. ("BCMC VI") is the general partner of BCP VI and BFF VI. Benchmark Capital Management Co. VII, L.L.C. ("BCMC VII") is the general partner of BCP VII and BFF VII. Defendant Fenton is a managing member of BCMC VI and BCMC VII.

*Peter Fenton* has served as a member of our board of directors since January 2019. Prior to this, Mr. Fenton served on the Hortonworks board from July 2011 until it merged with us in January 2019. Since September 2006, Mr. Fenton has served as a General Partner of Benchmark Capital Partners, a venture capital firm. From October 1999 to May 2006, Mr. Fenton served as a Managing Partner at Accel Partners, a venture capital firm. Mr. Fenton currently serves on the boards of directors of New Relic, Inc., a software analytics company, where he serves as Chair of the board of directors, Yelp Inc., a local directory and user review service, and Zuora, Inc., a provider of cloud subscription services. From February 2009 to May 2017, Mr. Fenton served on the board of directors of Twitter, Inc., a social networking service, and from July 2009 to October 2017, he served on the board of directors of Zendesk, Inc., a software development company that provides a software-as-a-service customer service platform. Mr. Fenton holds a B.A. in philosophy and an M.B.A. from Stanford University. Mr. Fenton was appointed to our board of directors in compliance with the Merger Agreement as a former director of Hortonworks.

The board of directors believes that Mr. Fenton processes specific attributes that qualify him to serve as a director, including his extensive experience in the venture capital industry, his in-depth knowledge of the technology sector and his service on the boards of directors of a range of public and private companies.

**Defendant Hammonds**

51.     Defendant Kimberly L. Hammonds ("Hammonds") has served as a Company director since March 2017. She also serves as the Chair of the Nominating and Governance Committee and as a member of the Mergers and Acquisitions Committee. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Hammonds beneficially owned 35,701 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Hammonds owned approximately $397,352 worth of Cloudera stock.

52.     For the 2019 fiscal year, Defendant Hammonds received $276,249 in compensation from the Company. This included $55,000 in fees earned or cash paid, and $221,249 in stock awards.

53.     The Company's 2019 Proxy Statement stated the following about Defendant Hammonds:

*Kimberly L. Hammonds* has served as a member of our board of directors since March 2017. Ms. Hammonds was a Member of the Management Board and the Group Chief Operating Officer of Deutsche Bank AG, a global financial services company, until on or about May 24, 2018. She joined Deutsche Bank as Global Chief Information Officer and Global Co-Head of Group Technology & Operations in November 2013. Prior to Deutsche Bank, Ms. Hammonds served as the Chief Information Officer of The Boeing Company, a global aerospace company. Before Boeing, Ms. Hammonds held senior management positions at Dell Corporation, a technology company, and Ford Motor Company, a multinational automaker, in product engineering, manufacturing, marketing and information technology. Ms. Hammonds serves on the board of directors of four

public companies, Red Hat, Inc., a software company, Tenable Holdings, Inc., a cyber exposure company, and Box, Inc., a cloud content management platform company, and Zoom Video Communications, a communications company. In May 2018, Ms. Hammonds founded Mangrove Digital Group, which provides technology and business transformation consulting expertise. Ms. Hammonds has a B.S. in mechanical engineering from the University of Michigan and an M.B.A. from Western Michigan University.

The board of directors believes that Ms. Hammonds possesses specific attributes that qualify her to serve as a director, including her experience working with information technology companies.

**Defendant Klausmeyer**

54.     Defendant Kevin Klausmeyer ("Klausmeyer") has served as a Company director since January 2019 pursuant to the Hortonworks Merger. He previously served as a member of the board of Hortonworks. Defendant Klausmeyer also serves as Chair of the Audit Committee and as a member of the Nominating and Governance Committee. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Klausmeyer beneficially owned 233,235 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Klausmeyer owned approximately $2.5 million worth of Cloudera stock.

55.     The Company's 2019 Proxy Statement stated the following about Defendant Klausmeyer:

*Kevin Klausmeyer* has served as a member of our board of directors since January 2019. Prior to this, Mr. Klausmeyer served on the Hortonworks board from August 2014 until it merged with us in January 2019. From April 2013 to October 2013, Mr. Klausmeyer served on the board of directors of Sourcefire, Inc., a provider of network security solutions (acquired by Cisco Systems, Inc.). From July 2003 to September 2012, Mr. Klausmeyer served on the board of directors of Quest Software, Inc., a software company that was acquired by Dell Inc. From July 2006 to February 2011, Mr. Klausmeyer served as the Chief Financial Officer of The Planet, Inc., a pioneer in the infrastructure-as-a-service market, which was acquired by SoftLayer Technologies, Inc. (a company later acquired by IBM). Mr. Klausmeyer served on the board of directors of Callidus Software Inc., a provider of software-as-a-service sales and marketing automation solutions, from April 2013 until its acquisition by SAP SE in April 2018. Mr. Klausmeyer holds a B.B.A. in accounting from the University of Texas. Mr. Klausmeyer was appointed to our board of directors in compliance with the Merger Agreement as a former director of Hortonworks.

The board of directors believes that Mr. Klausmeyer possesses specific attributes that qualify him to serve as a director, including his financial, accounting, operational and industry expertise derived from his prior experience as an executive and director for public and private technology companies.

**Defendant Li**

56.     Defendant Ping Li ("Li") served as a Company director from October 2008 until his resignation in July 2018.

During the period of time when the Company materially misstated information to the investing public to keep the stock price inflated, and before the scheme was exposed, Defendant Li made the following sales of Company stock, and made no purchases of Company stock:

| Date | Shares | Price | Proceeds |
|------|--------|-------|----------|
| 12/12/2017 | 2,675,710 | $   16.50 | $  44,149,215.00 |
| 10/2/2017 | 6,528,862 | $   15.79 | $ 103,090,731.00 |

Thus, in total, before the fraud was exposed, he sold 9,204,572 Company shares on inside information, for which he received approximately $147 million. His insider sales made with knowledge of material non-public information before the material misstatements and omissions were exposed demonstrate his motive in facilitating and participating in the scheme.

57.     The Company's 2018 Proxy Statement stated the following about Defendant Li:

*Ping Li* has served as a member of our board of directors since October 2008. Mr. Li is a Partner at Accel, a venture capital firm, where he has worked since 2004. Prior to Accel, Mr. Li was a senior Product Line Manager and Director of Corporate Development at Juniper Networks, Inc. from 2000 to 2004. Mr. Li has also previously worked as a strategy consultant for McKinsey & Company, advising technology clients in their growth strategies, from 1998 to 1999. Mr. Li currently serves on the boards of directors of several private companies, and previously served on the boards of directors of Nimble Storage, Inc., a flash storage solutions company from March 2011 to December 2016, and YuMe, Inc., a video advertising company, from July 2006 to July 2015. Mr. Li holds a A.B. in economics from Harvard University and an M.B.A. from Stanford University.

The board of directors believes that Mr. Li possesses specific attributes that qualify him to serve as a director, including his investment experience in the information technology and data storage industries and his experience serving on the boards of directors of public companies.

**Defendant Schooler**

58.     Defendant Rosemary Schooler has served as a Company director since December 2017. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Schooler beneficially owned

26,065,827 shares of the Company's common stock, which represented 9.5% of the Company's outstanding shares of common stock on that date. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, Schooler owned approximately $290 million worth of Cloudera stock.

59. The Company's 2019 Proxy Statement stated the following about Defendant Schooler:

Rosemary Schooler has served as a member of our board of directors since December 2017. Ms. Schooler is Corporate Vice President and General Manager of Data Center Sales for Intel. Ms. Schooler manages overall revenue across the various sales, technical support, and channels capabilities to deliver IoT solutions to Intel customers and partners. Previously, Ms. Schooler served as Intel's Vice President of the IoT Global Sales, IoT Strategy and Integrated Products Division in the Internet of Things Group (IoTG). Prior to her role in IoTG, Ms. Schooler was Vice President of the Data Center Group and General Manager of Intel's Communications and Storage Infrastructure Group. Ms. Schooler holds a B.S. in ceramics science and engineering from Pennsylvania State University.

The board of directors believes that Ms. Schooler possesses specific attributes that qualify her to serve as a director, including her experience in the information technology industry.

**Defendant Sordello**

60. Defendant Steven J. Sordello ("Sordello") served as a Company director from September 2014 until his resignation on January 2019.

61. For the 2019 fiscal year, Defendant Sordello received $276,249 in compensation from the Company. This included $55,000 in fees earned or cash paid, and $221,249 in stock awards.

62. The Company's 2018 Proxy Statement stated the following about Defendant Sordello:

*Steve J. Sordello* has served as a member of our board of directors since September 2014. Mr. Sordello is currently Chief Financial Officer of Linkedin Corporation, a professional social networking platform, where he has worked since July 2007. Prior to Linkedin, Mr. Sordello was Chief Financial Officer of TiVo Corporation, a digital recording company, from August 2006 to July 2007, and served as the Chief Financial Officer of Ask.com (originally known as Ask Jeeves), a web search engine, from May 1999 to October 2005. Mr. Sordello also serves on the board of directors of Atlassian Corporation PLC, an enterprise software company, and as a member of the Board of Trustees at Santa Clara University. Mr. Sordello holds a B.S. in management and an M.B.A. from Santa Clara University. Mr. Sordello was selected to serve as a member of our board of directors due to his operational and financial expertise gained as an executive at several companies.

The board of directors believes that Mr. Sordello possesses specific attributes that qualify him to serve as a director, including his operational and financial expertise gained as an executive at several companies.

**Defendant Stankey**

63.     Defendant Michael A. Stankey ("Stankey") has served as a Company director since February 2017. He also serves as the Chairman of the Compensation Committee and a member of the Audit Committee. According to the 2019 Proxy Statement, as of April 30, 2019, Defendant Stankey beneficially owned 104,634 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on April 30, 2019 was $11.13, McCaffery owned approximately $1,164,576 worth of Cloudera stock.

64.     For the 2019 fiscal year, Defendant Stankey received $275,597 in compensation from the Company. This included $54,348 in fees earned or cash paid, and $221,249 in stock awards.

65.     The Company's 2019 Proxy Statement stated the following about Defendant Stankey:

*Michael A. Stankey* has served as a member of our board of directors since February 2017. Mr. Stankey is currently the Vice Chairman of Workday, Inc., a cloud-based enterprise software company, a position he has held since June 2015. He previously served as Workday's President and Chief Operating Officer from September 2009 to June 2015. Prior to Workday, Mr. Stankey was a Partner at Greylock Partners, a venture capital firm, from October 2007 to September 2009. Mr. Stankey also served as the Chairman and Chief Executive Officer of PolyServe, Inc., a storage virtualization software company, from December 2001 until its acquisition by HP in April 2007. From April 1993 to December 2001, Mr. Stankey held a number of senior management positions, including Senior Vice President of North American Sales, at PeopleSoft, Inc., an enterprise software company. Mr. Stankey currently serves on the board of directors of Workday and of Okta, Inc., two public companies, and of Code42 Software, Inc., a private company. Mr. Stankey holds a B.B.A. from the University of Wisconsin-Eau Claire.

The board of directors believes that Mr. Stankey possesses specific attributes that qualify him to serve as a director, including his experience in the information technology industry and his experience serving on the board of directors of a public company.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

66.     By reason of their positions as officers, directors, and/or fiduciaries of Cloudera and because of their ability to control the business and corporate affairs of Cloudera, the Individual Defendants owed Cloudera and its shareholders fiduciary obligations of trust, loyalty, good faith, and

due care, and were and are required to use their utmost ability to control and manage Cloudera in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Cloudera and its shareholders so as to benefit all shareholders equally.

67.     Each director and officer of the Company owes to Cloudera and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

68.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Cloudera, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

69.     To discharge their duties, the officers and directors of Cloudera were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

70.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Cloudera, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Cloudera's Board at all relevant times.

71.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations,

financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose omissions of material fact in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

72.     To discharge their duties, the officers and directors of Cloudera were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Cloudera were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, California, and the United States, and pursuant to Cloudera's own Code of Business Conduct and Ethics (the "Code of Conduct");

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Cloudera conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Cloudera and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Cloudera's operations would comply with all applicable laws and Cloudera's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

73.     Each of the Individual Defendants further owed to Cloudera and the shareholders the duty of loyalty requiring that each favor Cloudera's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

74.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Cloudera and were at all times acting within the course and scope of such agency.

75.     Because of their advisory, executive, managerial, and directorial positions with Cloudera, each of the Individual Defendants had access to adverse, non-public information about the Company.

76.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Cloudera.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

77.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

78.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law,

including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, and violations of Sections 14(a) of the Exchange Act.

79.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of Cloudera, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

80.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

81.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Cloudera and was at all times acting within the course and scope of such agency.

### CLOUDERA'S CODE OF CONDUCT

82.     The Company's Code of Conduct, states that: it applies to "All employees, officers and directors." To this point, the Code of Conduct further states, "Cloudera's management have adopted this Code to set expectations and provide guidance applicable to every Cloudera employee and officer and every member of the Board…"

83.     Further, the Code of Conduct provides:

It is the policy of Cloudera that all of its employees, officers and directors adhere to the following principles:

- Honesty and candor in our activities, including observance of the spirit, as well as the letter of the law;
- Avoidance of conflicts between personal interests and the interests of Cloudera, or even the appearance of such conflicts;
- Avoidance of payments to candidates running for government posts or other government officials;
- Compliance with generally accepted accounting principles and controls;
- Maintenance of our reputation and avoidance of activities which might reflect adversely on Cloudera; and
- Integrity in dealing with the Cloudera's assets.

Anyone who violates the standards in this Code will be subject to disciplinary action, which, in appropriate circumstances, may include termination of employment for cause (for employees), removal from the Board (for directors), legal action or referral for criminal prosecution.

84.    The Code of Conduct provides, in relevant part, under the section titled, "Insider Trading," that:

Do Not Trade Cloudera Securities Based on Non-public Information. Every employee, officer and director (a "Covered Person") is prohibited from using "inside" or material non-public information about Cloudera, or about companies with which we do business, in connection with buying or selling our or such other companies' securities, including "tipping" others who might make an investment decision on the basis of this information. Covered Persons who have access to inside information are not permitted to use or share inside information for stock trading purposes or for any other purpose except to conduct Company business.

85.    The Code of Conduct provides that the Company strives to maintain integrity of their records and public disclosure, stating in relevant part, as to "Maintenance of Corporate Books, Records, Documents and Accounts; Financial Integrity; Public Reporting," that:

We strive to maintain integrity of our records and public disclosure. Our corporate and business records, including all supporting entries to our books of account, must be completed honestly, accurately and understandably. We depend on our books, records and accounts accurately and fairly reflecting, in reasonable detail, our assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities.

To help ensure the integrity of our records and public disclosure, we require that:

- no entry be made in our books and records that is intentionally false or misleading;
- transactions be supported by appropriate documentation;

- the terms of sales and other commercial transactions be reflected accurately in the documentation for those transactions and all such documentation be reflected accurately in our books and records;
- employees comply with our system of internal controls and be held accountable for their entries;
- any off-balance sheet arrangements of Cloudera are clearly and appropriately disclosed; • employees work cooperatively with Cloudera's independent auditors in their review of Cloudera's financial statements and disclosure documents;
- no cash or other assets be maintained for any purpose in any unrecorded or "off-the-books" fund; and
- records be retained or destroyed according to Cloudera's document retention policies or procedures then in effect.

Our disclosure controls and procedures are designed to help ensure that Cloudera's reports and documents filed with or submitted to the United States Securities and Exchange Commission (the "SEC") and other public disclosures are complete, fair and accurate, fairly present our financial condition and results of operations and are timely and understandable.

86.     The Code of Conduct further states in the section entitled, "Maintenance of Corporate Books, Records, Documents and Accounts; Financial Integrity; Public Reporting," that:

Employees who collect, provide or analyze information for or otherwise contribute in any way in preparing or verifying these reports should adhere to all disclosure controls and procedures and generally assist Cloudera in producing financial disclosures that contain all of the information about Cloudera that is required by law and would be important to enable investors to understand our business and its attendant risks. In particular:

- no employee may take or authorize any action that would cause Cloudera's financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the SEC or other applicable laws, rules and regulations;
- all employees must cooperate fully with our finance department, as well as our independent auditors and legal counsel, respond to their questions with candor and provide them with complete and accurate information to help ensure that Cloudera's books and records, as well as its reports filed with the SEC, are accurate and complete; and
- no employee should knowingly make (or cause or encourage any other person to make) any false or misleading statement in any of Cloudera's reports filed with the SEC or knowingly omit (or cause or encourage any other person to omit) any information necessary to make the disclosure in any of such reports accurate in all material respects.

In connection with the preparation of the financial and other disclosures that we make to the public, including by press release or filing a document with the SEC, directors must,

in addition to complying with all applicable laws, rules and regulations, follow these guidelines:

- act honestly, ethically, and with integrity;
- comply with this Code;
- endeavor to ensure complete, fair, accurate, timely and understandable disclosure in our filings with the SEC;
- raise questions and concerns regarding our public disclosures when necessary and ensure that such questions and concerns are appropriately addressed;
- act in good faith in accordance with the director's business judgment, without misrepresenting material facts or allowing independent judgment to be subordinated by others; and
- comply with our disclosure controls and procedures and internal controls over financial reporting.

If you become aware that our public disclosures are not full, fair and accurate, or if you become aware of a transaction or development that you believe may require disclosure, you should report the matter immediately to your supervisor or the Compliance Officer.

87.     The Code of Conduct provides under the section entitled, "Conduct of Senior Financial Personnel," that:

Our finance department has a special responsibility to promote integrity throughout the organization, with responsibilities to stakeholders both inside and outside of Cloudera. As such, the Board requires that the Chief Executive Officer and senior personnel in our finance department adhere to the following ethical principles and accept the obligation to foster a culture throughout Cloudera as a whole that ensures the accurate and timely reporting of our financial results and condition.

Because of this special role, we require that the Chief Executive Officer, Chief Financial Officer, Principal Accounting Officer and any other persons performing similar functions ("Senior Financial Employees") to:

- act with honesty and integrity and use due care and diligence in performing his or her responsibilities to Cloudera.

*     *     *

- provide constituents with information that is accurate, complete, objective, relevant, timely and understandable, including information for inclusion in our submissions to governmental agencies or in public statements.
- comply with applicable laws, rules, and regulations of federal, state and local governments, and of any applicable public or private regulatory and listing authorities.
- achieve responsible use of and control over all assets and resources entrusted to each Senior Financial Employee

1

2

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

88.     Cloudera is a software company that offers data platforms, products, and services. According to Cloudera's prospectus filed with the SEC on a form 424B4 for the IPO on April 28, 2017 (the "IPO Prospectus"), Cloudera specializes in providing data management, machine learning and advanced analytical tools to businesses.[4] Cloudera's principal product platform is "[its] pioneering hybrid open source software (HOSS) model…" that "...incorporates the best of open source with our robust proprietary software to form an enterprise-grade platform." The HOSS platform "delivers an integrated suite of capabilities for data management, machine learning and advanced analytics, affording customers an agile, scalable and cost-effective solution for transforming their businesses."  The most prominent of the open source software is the Apache Software Foundation's ("ASF") open source Hadoop software, "this software project has spawned a rich ecosystem of open source and proprietary software for next generation data management." Open source technology "refers to something people can modify and share because its design is publicly accessible." The goals of open source technology are to "embrace and celebrate principles of open exchange, collaborative participation, rapid prototyping, transparency, meritocracy, and community-oriented development."[5]

89.     The Company has two main revenue segments: (i) subscriptions; and (ii) services. The primary source of revenue is from subscriptions, which are usually one to three years long. The revenue from subscription is obtained proportionally throughout the subscription period. Revenues from services are acquired from services that Cloudera provides to assist their customers in operating the Company's

---

[4] Data Management is a process whereby data is essentially managed, by acquiring it and protecting it, in order to ensure that the data is useable and reliable. Machine Learning, a subset of Artificial Intelligence, is the vast science of a machine emulating humans. Advanced Analytics is the autonomous/semi-autonomous examination of data using highly developed tools. *See generally* https://www.ngdata.com/what-is-data-management/; https://www.sas.com/en_us/insights/analytics/machine-leanring.html;https://www.gartner.com/it-glossary/advanced-analytics/. Last visited July 8, 2019.

[5] *What is Open Source?*, opensource.com, https://opensource.com/resources/what-open-source. Last visited July 8, 2019.

1    products. For the 2019 fiscal year, approximately 85% of the Company's total revenue came from

2    subscriptions.

3        90.    On October 3, 2018, the Individual Defendants announced that Cloudera had entered into

4    the Hortonworks Merger. According to the Merger Press Release, Hortonworks was Cloudera's chief

5    competitor in the Hadoop data analytics space. The Horton Merger was a stock-for-stock deal that was

6    valued at $5.2 billion. Further, under the terms of the Horton Merger, "Cloudera stockholders [would]

7    own approximately 60% of the equity of the combined company and Hortonworks stockholders [would]

8    own approximately 40%[]" and "Hortonworks stockholders [would] receive 1.305 common shares of

9    Cloudera for each share of Hortonworks stock owned."

10       91.    Throughout the relevant period, the Individual Defendants caused the Company to issue

11   false and misleading statements in regard to the profitability and success of the Company.

12   **False and Misleading Statements**

13   ***April 28, 2017 Form 424B4***

14       92.    On April 28, 2017, Cloudera filed the IPO Prospectus. The IPO Prospectus touted that

15   Cloudera had experienced expeditious expansion over the past several years and asserted that following

16   the IPO, these successful trends would continue. The IPO Prospectus stated, ***"We have experienced***

17   ***rapid growth in recent periods and expect our growth to continue."*[6]** The IPO Prospectus further noted

18   that Cloudera's revenues from the fiscal year ended January 31, 2016 to the fiscal year ended January

19   31, 2017, increased from $166 million to $261 million, "representing year-over-year growth in revenue

20   of 57% for our most recent fiscal year." The Individual Defendants further represented in the IPO

21   Prospectus, that they believed Cloudera's HOSS platform was "the most widely adopted big data

22   platform, with a growing range of applications being built on it."

23       93.    Likewise, the IPO Prospectus asserted that the Company "will further expand our

24   customer opportunity through the continued growth in use cases and packaged solutions, the expansion

25   of our partner ecosystem and the proliferation of skills, driven by ease of use and accelerating adoption

26   of the cloud" and that Cloudera was "only beginning to penetrate [its] market opportunity with

27

28   _____

[6] Emphasis in original unless otherwise notes in this Complaint.

Global 8000 companies and public sector entities." The IPO Prospectus further stated the Company's plan to use the revenue from the IPO to finance the Company's "expected growth" once it transitioned to a public company.

94.     The IPO Prospectus proclaimed that Cloudera had a competitive advantage and abundant growth opportunities because the Company focused mainly on the largest businesses in the world. To this point, the IPO Prospectus stated, in relevant part:

> We market and sell our platform to a broad range of organizations, although we focus our selling efforts on large enterprises, primarily the Global 8000, as well as large public sector organizations. We target these organizations because they capture and manage the vast majority of the world's data and operate highly complex IT environments, and our enterprise-grade platform has the greatest opportunity to benefit these organizations. Our total number of Global 8000 customers grew from 255 as of January 31, 2015 to 381 as of January 31, 2016, and grew to 495 as of January 31, 2017. For the fiscal years ended January 31, 2015, 2016 and 2017, revenue from our Global 8000 customers represented 61%, 71% and 73% of total revenue, respectively, based on the Global 8000 constituents as of November 1, 2016. For fiscal 2015, 2016 and 2017, revenue from our public sector, including large public sector, customers represented 11%, 9% and 10% of total revenue, respectively.

95.     The IPO Prospectus emphasized the Company's business plan, "land and expand." The Individual Defendants stated that "land and expand" would "use the initial sale as a foothold to increase revenue per customer by increasing the amount of data and number of use cases each customer runs through our platform." Then, " After an initial purchase of our platform, we work with our customers to identify new use cases that can be developed on or moved to our platform, ultimately increasing the amount of data managed on our platform as well as the number and size of our platform deployments." The IPO Prospectus further stated that the Company was devoted to expanding its "category leadership in open source data management" and also, "expanding our strategic partnerships and alliances, to acquire new customers and increase penetration among existing customers," with a "business model focuses on maximizing the lifetime value of a customer relationship."

96.     Most notably, the IPO Prospectus purported that, "over time, as [Cloudera's] customer base grows and a relatively higher percentage of [its] subscription revenue is attributable to renewals or greater usage among existing customers relative to new customers, associated sales and marketing

expenses and other allocated upfront costs as a percentage of revenue will decrease…" and, in turn, the Company would achieve positive cash flows and financial gains.

### June 8, 2017 Press Release and Earnings Call

97.     On June 8, 2017, the Company issued a press release that reported Cloudera's fiscal year 2018 first quarter financial results for the period ended April 30, 2017 ("1Q18") (the "1Q18 Press Release"). The 1Q18 Press Release stated that for its 1Q18, the Company's total revenue was $79.6 million and the Company's subscription revenue was $64.7 million, a 41% and 59% increase, respectively, from the first quarter of fiscal 2017. The 1Q18 Press Release further stated, that strong collections provided "[o]perating cash flow for the quarter was positive $5.0 million compared to operating cash flow of negative $23.6 million in the first quarter fiscal 2017."

98.     The same day, June 8, 2017, Cloudera hosted an earnings call to discuss its 1Q18 results with investors (the "1Q18 Earnings Call"). During the 1Q18 Earnings Call, Defendant Reilly touted, "This quarter we had some great new customer wins while some key existing customers expanded their utilization of our platform through additional use cases." Further, Defendant Frankola asserted that the Company was effectively increasing revenues obtained from existing customers. Defendant Frankola stated, in relevant part:

> [W]e benefit from multiple growth vector. As customer data grows revenue grows. As new use cases are deployed revenue grows. And as partners build applications on our platform revenue grows. Note that a relatively small portion of revenue relates to professional services and training which are focused on ensuring customer success and driving expanded use of our platform.

99.     Defendant Frankola went on to emphasize in the 1Q18 Earnings Call that the Company experienced a 142% net expansion rate during 1Q18. He went on and stated that because Cloudera had "penetrated only about 7% of the Global 8,000 and have thus far captured just a small portion of our customers' date-related spending[]" Cloudera still had "plenty of room for growth within the segment."

### June 9, 2018 Form 10-Q

100.     The next day, on June 9, 2018, the Company filed its quarterly report on a Form 10-Q with the SEC for the period ended April 30, 2017, announcing its first quarter financial results (the "1Q18 10-Q). The 1Q18 10-Q affirmed the aforementioned 1Q18 financial results.

101.    Attached to the 1Q18 10-Q were certifications pursuant to Rule 13a-14(a) and 15d-14(a) under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Reilly and Frankola, attesting to the accuracy of the 1Q18 10-Q.

### *September 7, 2017 Press Release and Earnings Call*

102.    On September 7, 2017, the Company issued a press release that reported Cloudera's fiscal year 2018 second quarter financial results for the period ended July 31, 2017 ("2Q18") (the "2Q18 Press Release"). The 2Q18 Press Release stated that for its 2Q18, the Company's total revenue was $89.8 million and the Company's subscription revenue was $74 million, a 39% and 46% increase, respectively, from the second quarter of fiscal 2017.  Defendant Reilly in the 2Q18 Press Release stated, "In our fiscal second quarter, we outperformed on sales, customer acquisition, customer expansion and cash flow objectives."

103.    The same day, September 7, 2017, Cloudera hosted an earnings call to discuss the Company's 2Q18 financial results with investors (the "2Q18 Earnings Call"). During the 2Q18 Earnings Call, Defendant Reilly touted, "We are reporting a strong second quarter, driven by much of the new product innovation we've already announced." He went and stated, "In Q2, we executed well as a company, and we continued to benefit from major secular trends in machine learning, cloud and the Internet of Things"

104.    Likewise, in the 2Q18 Earnings Call, Defendant Frankola emphasized that "45 net new Global 8000 customers" were added to Cloudera in 2Q18. Defendant Frankola asserted, that "[i]n Q2, many of these customers increased their utilization of the Cloudera platform, fueling growth and driving out net expansion rate to 140% for the quarter." He further stated, "We continue to be successful in acquiring and growing large customers, and the benefits of our land-and-expand model are evident in our improving margins and cash flow."

105.    Defendant Frankola went on and stated that the Company successfully implemented its plan to decrease spending on new revenues in order to reach a greater profitability. In relevant part, he stated:

> Sales and marketing expense was $49.6 million for the second quarter or 55% of total revenue. This compares to 70% of revenue in the year-ago period. This progress is

consistent with our expectations. The unique dynamics of the Cloudera model, with higher customer acquisition costs offset by much higher customer lifetime value produces improving sales efficiencies as our customers grow.

106.    Further, on the 2Q18 Earnings Call, Defendant Reilly responded to a question from an analyst and stated that the Company's concentration on big customers was successful and that Cloudera's salesforce was performing very well. Defendant Reilly stated, in relevant part:

We continually increase our focus on going after the Global 8000. It's how we have aligned our sales force. It's how we drive our marketing. It's how we work with our partners in identifying industry-specific solutions, and I think that focus has really benefited us in capturing, and is – we've executed very well. I think our competitors have made some missteps and that created some opportunities where we gained some more wins. But I would take greater pride in just our focus. All of R & D is going after the needs of large enterprises in these hybrid and, multi-cloud environments, and that is differentiating us.

### September 12, 2017 Form 10-Q

107.    On September 12, 2017, the Company filed its quarterly report on a Form 10-Q with the SEC for the period ended July 31, 2017, announcing its second quarter financial results (the "2Q18 10-Q). The 2Q18 10-Q affirmed the aforementioned 2Q18 financial results.

108.    Attached to the 2Q18 10-Q were SOX certifications signed by Defendants Reilly and Frankola, attesting to the accuracy of the 2Q18 10-Q.

### September 15, 2017 Form S-1

109.    On September 15, 2017, Cloudera filed a Form S-1 with the SEC in which it notified the public of a follow-on stock offering, a second public offering (the "SPO"), in which it ultimately sold 15.4 million common shares at $16.45 per share, for total gross proceeds of 254 million. The majority of the shares during the follow-up stock offering were sold by Company insiders. Defendant Olson sold more than $9 million worth of Company shares.

110.    The Form S-1 was signed by Defendants Reilly, Frankola, Olson, Cole, Hammonds, Li, Sordello and Stankey.

### December 7, 2017 Press Release and Earnings Call

111.    On December 7, 2017, the Company issued a press release that reported Cloudera's fiscal year 2018 third quarter financial results for the period ended October 31, 2017 ("3Q18") (the "3Q18

Press Release"). The 3Q18 Press Release stated that for 3Q18, the Company's total revenue was $94.6 million and the Company's subscription revenue was $78.1 million, a 41% and 48% increase, respectively, from the third quarter of fiscal 2017. Defendant Reilly, in the 3Q18 Press Release, stated, "We had another strong quarter in Q3, exceeding expectations on financial measures while increasing our competitive advantage in cloud analytics through significant new product innovation." Defendant Reilly further stated, "We are now at the scale where we can execute on multiple fronts concurrently[]" and that Cloudera's "financial model is exhibiting consistent operating leverage as we march toward operating cash flow break-even."

112.    The same day, December 7, 2017, Cloudera hosted an earnings call to discuss its 3Q18 financial results with investors (the "3Q18 Earnings Call"). During the 3Q18 Earnings Call, Defendant Olson stated, that the Company was "pleased with [its] growing partnerships with Amazon and Microsoft as they realize Cloudera's platform built on SDX can bring large enterprises with mission-critical applications to their cloud infrastructure."

113.    Defendant Reilly then emphasized the Company's alleged market growth. He stated, in relevant part:

> The market opportunity is large, and the innovation we are delivering is essential to capturing more of it. We're in the early stages of a high-growth market with a rate and pace of change that is staggering. Our team is navigating it well with consistent execution, and we're confident in our strategy. We continue to gain share with the most valuable customers, large enterprises and public sector entities globally. And we're pleased with the operating leverage demonstrated in our business model. We remain focused on the long term, and will continue to invest in our partners, the community and in developing differentiated technology.

114.    Defendant Frankola stated, during the 3Q18 Earnings Call, that Cloudera was just "4 to 6 quarters away from estimated cash flow positive."

### December 8, 2017 Form 10-Q

115.    The next day, on December 8, 2017, the Company filed its quarterly report on a Form 10-Q with the SEC for the period ended October 31, 2017, announcing its third quarter financial results (the "3Q18 10-Q"). The 3Q18 10-Q affirmed the aforementioned 3Q18 financial results.

116.    Attached to the 3Q18 10-Q were SOX certifications signed by Defendants Reilly and

1

Frankola, attesting to the accuracy of the 3Q18 10-Q.

2

117.     The statements in ¶¶92-116 were materially false and misleading, and they failed to

3

disclose material facts necessary to make the statements made not false and misleading. Specifically, the

4

Individual Defendants improperly failed to disclose, *inter alia*, that: (1) Cloudera's competitors' cloud-

5

based technologies were outperforming the Company's Hadoop-based technology because the cloud-

6

based technologies were easily integrated with products already widely adopted by businesses  (such as

7

Amazon Web Services, Microsoft Azure and the Google Compute Cloud); (2) as a result, Cloudera was

8

experiencing extensive difficulty obtaining new customers willing to adopt its Hadoop-based platform;

9

(3) the Company's "land and expand" model was an ineffective attempt to grow profits, in reality, few

10

of Cloudera's existing customers had interest in the additional products that Cloudera was offering; (4)

11

consequently, the Company expended a growing amount of funds on sales and marketing; (5) due to the

12

foregoing, Cloudera could not generate annual positive cash flows; and (6) the Company failed to

13

maintain internal controls. As a result of the foregoing, the Company's public statements were

14

materially false and misleading at all relevant times.

15

118.     Furthermore, according to SEC Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii) ("Item

16

303"), it is mandatory for the IPO Prospectus and documents associated with the SPO to "[d]escribe any

17

known trends or uncertainties that have had or that the registrant reasonably expects will have a material

18

favorable or unfavorable impact on net sales or revenues or income from continuing operations."

19

Likewise, according to SEC Regulation S-K 17 C.F.R. § 229.503 ("Item 503"), it is also mandatory to

20

include in the "Risk Factor" section of the registration statements and prospectuses, "a discussion of the

21

most significant factors that make the offering speculative or risky[]" and to "set forth each risk factor

22

under a subcaption that adequately describes the risk." The Individual Defendants violated Item 303

23

because they failed to disclose the facts in the aforementioned paragraph. These facts were "known

24

trends" and "uncertainties" that were likely to, and did, have a material unfavorable impact on

25

Cloudera's revenues and income from continuing operations. The Individual Defendant's failure to

26

disclose the facts in the aforementioned paragraph also violated Item 503 because these facts were not

27

28

properly disclosed, or disclosed at all, yet they were "the most significant factors that make the offering speculative or risky."

**The Truth Begins to Emerge While False and Misleading Statements Continue**

*April 3, 2018 Press Release and Earnings Call*

119.    On April 3, 2018, after the close of market, the Company issued a press release that reported Cloudera's fourth quarter financial results ("4Q18") and full year financial results for the year ended January 31, 2018 ("Full Year 18") (the "4Q18 and Full Year 18 Press Release"). The press release stated that the Company's total revenue was $103.5 million and subscription revenue was $84.3 million. The Company's negative operating cash flow was $22 million for the fourth quarter. Most troubling, the Company's outlook for the Company's fiscal year 2019 was disappointing. The fiscal year 2019 outlook included only $435 million to $445 million of total revenue, depicting an abrupt decline in growth. The disappointing outlook continued with an expected "non-GAAP net loss per share in the range of $0.62 to $0.59 per share[]" and "[o]perating cash flow in the range of negative $40 million to $35 million." This news shocked investors because it came less than a year after Cloudera went public and less than six months after Cloudera's SPO.

120.    The same day, April 3, 2018, Cloudera hosted an earnings call to discuss the financial results for 4Q18 and Full Year 18 (the "4Q18 and Full Year 18 Earnings Call").  During the 4Q18 and Full Year 18 Earnings Call, the Company announced a sharp drop in Cloudera's expansion bookings that had transpired in 2018. This indicated that Cloudera's "land and expand" business model was not as expansive as originally advertised. The 4Q18 and Full Year 18 Earnings Call indicated that Cloudera's customers were not expanding their usage of Cloudera products at an adequate rate. This was essentially confirmed by Defendant Reilly. He introduced a plan to "target" "a subset of the Global 8000" in a goal to "optimize [its] go-to-market efforts for the greatest return[]" and thus "enable [Cloudera] to grow faster and generate cash sooner." Defendant Reilly also announced, that the Company will be hiring a new head of Global Field Operations and, further, that the Company will be undergoing a considerable reorganization, particularly of the Company's salesforce. Defendant Reilly further stated, that "Cloudera

is well positioned to continue to grow" and "the changes we've undertaken have strengthened our prospects."

121.    Further, on the 4Q18 and Full Year 18 Earnings Call, an analyst, regarding the slowdown in bookings and revenue expansion, asked "Are there emergence of any new rivals?" Defendant Reilly completely rejected this notion and stated in his answer, "So I see nothing that gives me concern about the market . . . . No Changes in the competitive landscape nor end market demand." Defendant Reilly claimed that "the cloud is turning out to be a tremendous tailwind for us." This is because the Company had "figured out how to win in that market and then stay focused on large enterprises who value our enterprise features." Defendant Reilly continued, "What I like to say to customers all the time is we are better than Amazon and Amazon. Our products on Amazon are integrated better and operated better than Amazon's own offerings."

122.    Also during the 4Q18 and Full Year 18 Earnings Call, Defendant Frankola stated that the Company was "still [] confident [Cloudera would] get to that cash flow positive in 2020." This seemed to indicate that Cloudera would have a significant growth in billings and have proportionately lower spending in the coming future.

123.    On this news, Cloudera's common stock fell $8.95 on abnormally high volume, from closing on April 3, 2018 at $22.24 to close on April 4, 2018 at $13.29.

### April 4, 2018 Form 10-K

124.    On April 4, 2018, the Company filed with the SEC its annual report for the fiscal year ended January 31, 2018 on a Form 10-K (the "2018 10-K"), which was signed by Defendants Reilly, Frankola, Olson, Cole, Hammonds, Li, Schooler, Sordello and Stankey. The 2018 10-K affirmed the aforementioned Full Year 18 financial results.

125.    Attached to the 2018 10-K were SOX certifications signed by Defendants Reilly and Frankola, attesting to the accuracy of the 2018 10-K.

*May 16, 2018 Proxy Statement*

126.     On May 16, 2018, the Company filed its 2018 Proxy Statement. Defendants Reilly, Cole, Hammonds, Li, Olson, Stankey, Schooler and Sardello solicited the 2018 Proxy Statement which contained material misstatements and omissions.[7]

127.     The 2018 Proxy Statement stated, that the Company has a Code of Business Conduct and Ethics (the Code of Conduct) which is posted on the Company's website. The Code of Conduct stated that it is "applicable to every Cloudera employee and officer and every member of the Board."

128.     The 2018 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as evident by the numerous false and misleading statements alleged herein, the insider trading engaged in by two of the Individual Defendants, and the Individual Defendant's failures to report violations of the Code of Conduct.

129.     The Individual Defendants also caused the 2018 Proxy Statement to be false and misleading with regard to executive compensation in that they purported to employ "pay-for-performance" elements, including equity awards designed to "mak[e] a substantial portion of each executive officer's target total direct compensation dependent upon our stock price and/or total stockholder return" while failing to disclose that the Company's share price was artificially inflated as a result of false and misleading statements alleged herein.

130.     The 2018 Proxy Statement also failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants improperly failed to disclose, *inter alia*, that: (1) Cloudera was experiencing extensive difficulty obtaining new customers willing to adopt its Hadoop-based platform; (2) as such, the Company needed to increase spending on sales and marketing; (3) Cloudera could not generate annual positive cash flows due to decreased growth opportunities; and (4) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

---

[7] Plaintiff's allegations with respect to the misleading statements in the 2018 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*June 6, 2018 Press Release and Earnings Call*

131.    On June 6, 2018, the Company issued a press release (the "1Q19 Press Release") that reported Cloudera's fiscal year 2019 first quarter financial results for the period ended April 30, 2018 ("1Q19"). The 1Q19 Press Release stated that for 1Q19, the Company's total revenue was $102.7 million and the Company's subscription revenue was $85.9 million, a 29% and 33% increase, respectively, from the first quarter of fiscal 2018.  These numbers were consistent with, and, or above, the Individual Defendant's prior predictions.

132.    The same day, June 6, 2018, Cloudera hosted an earnings call to discuss its 1Q19 financial results with investors (the "1Q19 Earnings Call"). During the 1Q19 Earnings Call, Defendant Reilly reported that the previously discussed strategic moves had "gone as anticipated." Defendant Reilly further stated, that the Individual Defendants "initiated these changes to enhance the company's posture for sustained long-term growth." Defendant Reilly, responded to an analyst question, and stated, that Cloudera would "compete very effectively" against competitors such as Microsoft, Amazon and Google because "[w]hen we are competing in the cloud, we have so many advantages."

*June 6, 2018 Form 10-Q*

133.    On June 6, 2018, the Company filed its quarterly report on a Form 10-Q with the SEC for the period ended April 30, 2018, announcing its first quarter financial results (the "1Q19 10-Q). The 1Q19 10-Q affirmed the aforementioned 1Q19 financial results.

134.    Attached to the 1Q19 10-Q were SOX certifications signed by Defendants Reilly and Frankola, attesting to the accuracy of the 1Q19 10-Q.

*September 5, 2018 Press Release and Earnings Call*

135.    On September 5, 2018, the Company issued a press release (the "2Q19 Press Release") that reported Cloudera's fiscal year 2019 second quarter financial results for the period ended July 31, 2018 ("2Q19"). The 2Q19 Press Release stated that for 2Q19, the Company's total revenue was $110.3 million and the Company's subscription revenue was $93.1 million, a 23% and 26% increase, respectively, from the second quarter of fiscal 2018.  These numbers were above the Company's prior predictions. In the 2Q19 Press Release, Defendant Reilly stated, "In Q2 we made substantial progress in

our product and go-to-market transitions, delivering strong financial results in the quarter and accomplishing many of our goals for sustained success in our market."

136.    The same day, September 5, 2018, Cloudera hosted an earnings call to discuss its 2Q19 financial results with investors (the "2Q19 Earnings Call"). On the 2Q19 Earnings Call, Defendant Reilly echoed that the implementation of the new sales strategies at Cloudera were successful. Defendant Reilly stated, in relevant part:

> [I]n Q2 we made substantial progress in our product and our go-to-market initiatives, delivering strong financial results in the quarter and accomplishing many of our goals for sustained success in our market. I am pleased with our execution in the quarter and look forward to continued improvement and performance as all of our initiatives are fully implemented. It is encouraging to see the changes we are making being validated by customers and partners. In addition, the secular tailwinds in our market remain intact and demand is strong across our solution set.

137.    Further, on the 2Q19 Earnings Call, Defendant Frankola similarly claimed, "We had a strong quarter across the board, especially concerning the key initiatives of our transition plan." Defendant Frankola went on and stated, "[T]he 128% net expansion rate in Q2 was better than expected due to improved renewal rates and increased focus on customer success. Collectively, these measures best reflect our ability to both acquire target customers and advance customers along the journey towards increasingly attractive unit economics."

138.    Defendant Reilly, soon after, during the 2Q19 Earnings Call, reiterated Defendant Frankola's aforementioned positive statements. He stated that Cloudera is "doing extremely, extremely well[]" in the Company's three major areas of focus. Defendant Reilly went on and stated, that Individual Defendants are "putting in place [a] channel to allow [Cloudera] to address a broader market at a lower acquisition cost and support cost."

### September 6, 2018 Form 10-Q

139.    The next day, on September 6, 2018, the Company filed its quarterly report on a Form 10-Q with the SEC for the period ended July 31, 2018, announcing its second quarter financial results (the "2Q19 10-Q). The 2Q19 10-Q affirmed the aforementioned 2Q19 financial results.

140.    Attached to the 2Q19 10-Q were SOX certifications signed by Defendants Reilly and Frankola, attesting to the accuracy of the 2Q19 10-Q.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### *October 3, 2018 Press Release and Investor Call*

141.    The Merger Press Release announced that Cloudera had entered a definitive merger agreement with Hortonworks, Inc, the Hortonworks Merger. Hortonworks was Cloudera's chief competitor in the Hadoop data analytics space. The Horton Merger was a stock-for-stock deal that was valued at $5.2 billion. Further, under the terms of the Horton Merger, "Cloudera stockholders will own approximately 60% of the equity of the combined company and Hortonworks stockholders will own approximately 40%[]" and "Hortonworks stockholders will receive 1.305 common shares of Cloudera for each share of Hortonworks stock owned."

142.    Defendant Reilly, now CEO of the combined company, stated that the "businesses are highly complementary and strategic" and would "deliver the industry's first enterprise data cloud from the Edge to AI" and "advance our shared commitment to customer success in their pursuit of digital transformation."

143.    The same day, October 3, 2018, Cloudera hosted an investor conference call to discuss the Hortonworks Merger (the "Merger Investor Call"). Defendant Reilly expressed that the "primary motivation for this combination is to accelerate innovation" and that the "combined company will have substantial scale, resources and talent to do more faster." Defendant Reilly further stated, "Beyond accelerating innovation in cloud technology, the transaction also produces significant financial benefits, including large cost synergies."

144.    On the Merger Investor Call, Defendant Frankola stated that the combination of the two companies would result in "sales and growth on day 1," notable synergies and lower costs. Defendant Frankola stated, in relevant part:

The 2 companies together combine for almost [$0.75 billion] of revenue, growing in excess of 30% a year. These are all previously reported numbers presented as of our respective Q2s. We expect to close the merger in calendar Q1 of next year so the pro forma combined will be meaningfully larger. The important point is that the day the merger closes, we will have significant scale and growth.

This combination will unlock powerful synergies. The deal was driven primarily by the strategic merit that Tom and Rob discussed. These benefits will likely generate additional revenue opportunity. However, we have not built any potential revenue upside into our financial model. Given the strategic fit between the companies, we are confident that

there will be significant opportunities to improve both the efficiency and the effectiveness of out internal operations. We expect these improvements to drive more than $125 million of cost synergies per year while allowing additional investment in growth areas including IoT, hybrid cloud, data warehousing, machine learning and AI.

\*       \*       \*

As a finance person, this is where I get most excited. This transition significantly accelerates the path to our long-term model. We expect to continue to grow quickly while generating significant cash flow. Calendar year '19 , or fiscal year '20 for Cloudera, will be the year where we integrate the companies and take a steps to generate more than $125 million annual cost synergies. Calendar year '20 or fiscal year '21 shows what the new company is expected to look like once we have achieved most of the savings. At that time, we expect to be more than $1 billion in revenue, growing at more than 20% per year and generating more than 15% operating cash flow margin.

***December 5, 2018 Press Release and Earnings Call***

145.    On December 5, 2018, the Company issued a press release that reported Cloudera's fiscal year 2019 third quarter financial results for the period ended October 31, 2018 ("3Q19") (the "3Q19 Press Release"). The 3Q19 Press Release stated that for 3Q19, the Company's total revenue was $118.2 million and the Company's subscription revenue was $99.7 million, a 25% and 28% increase, respectively, from the third quarter of fiscal 2018. These numbers were above the Individual Defendant's original predictions. In the 3Q19 Press Release, Defendant Reilly stated, in relevant part:

We are pleased with out execution in Q3 and our progress on the strategic combination we have announced with Hortonworks. Pre-closing merger integration planning is going well. And more importantly, we are very encouraged by the reception that our plans are receiving from customers, partners, and the developer community. Together, we will enhance our competitiveness, accelerate our momentum in cloud innovation, and provide a comprehensive solution-set for customers, from the Edge to AI.

146.    The same day, December 5, 2018, Cloudera hosted an earnings call to discuss its 3Q19 financial results with investors (the "3Q19 Earnings Call"). On the 3Q19 Earnings Call, Defendant Reilly stated, "While much of our focus is on long-term strategy and merger planning, it is reassuring to see continued favorable results from the go-to-market changes we initiated a few quarters ago." Again, emphasizing the favorability of the Hortonworks Merger, Defendant Reilly stated that, Cloudera had "identified the potential for even greater synergies than assumed." He further stated, in relevant part:

The combination of Cloudera and Hortonworks will fuel innovation at a greater rate and pace than we could have achieved as stand-alone companies. The new Cloudera will have

the scale, resources and talent to do more and do it faster. Our significant investments in engineers and committers working with the open-source community will enable us to innovate on key technologies ranging from real-time streaming at the Edge to an enterprise-grade cloud-native data warehouse and new platform to industrialize AI, all delivering the industry's first enterprise data cloud.

*      *      *

The combination of Cloudera and Hortonworks creates a clear market leader in industry standard for a modern data platform, producing significant advantages for customers and partners. Establishing the industry standard minimizes risk and improves clarity for customers. It simplifies customers' evaluation processes and speeds decision-making. The standard also focuses the open-source communities' innovative efforts.

*      *      *

Last but certainly not least are the significant financial synergies produced by merging the 2 companies. We expect to generate substantially more cash in a shorter time frame than if we have remained independent companies. We will also accelerate the achievement of our long-term target model. Although the merger will generate large cost savings, it is important to note that we intend to invest some of those savings into enhanced go-to-market capabilities and the technological innovations mentioned previously.

147.    Defendant Reilly, in reply to an analyst question regarding concerns that Cloudera's platform was becoming antiquated stated, "Cloudera is in a very unique competitive position to capture the market growth where the market is headed."

148.    One the 3Q19 Earnings Call, Defendant Frankola claimed, that "[a]cross the board, [Cloudera] had another good quarter in Q3[]" and that the Company's net expansion rate of customers in Q319 "reflect our ability to both acquire target customers and advance customers along a journey toward increasingly attractive unit economics." Defendant Frankola went on and stated, that Cloudera had already "achieved more than 20% of merger synergies before the deal has closed." Thereafter, on the Q319 Earnings Call, Defendant Frankola further stated, "From my standpoint, everything that I see gives us confidence. . . .everything that we see happening with the merger with Hortonworks, the ability to cross-sell product. I don't need to go through the whole pitch of innovation and cloud and so forth. All of that will be a tailwind for positive growth in net expansion rates."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***December 6, 2018 10-Q***

149.    The next day, on December 6, 2018, the Company filed its quarterly report on a Form 10-Q with the SEC for the period ended October 31, 2018, announcing its second quarter financial results (the "3Q19 10-Q). The 3Q19 10-Q affirmed the aforementioned 3Q19 financial results.

150.    Attached to the 3Q19 10-Q were SOX certifications signed by Defendants Reilly and Frankola, attesting to the accuracy of the 3Q19 10-Q.

151.    The statements in ¶¶119-122, 124-125 and 131-150 were materially false and misleading, and they failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants improperly failed to disclose, *inter alia*, that: (1) Cloudera's competitors' cloud-based technologies were outperforming the Company's Hadoop-based technology because the cloud-based technologies were easily integrated with products already widely adopted by businesses  (such as Amazon Web Services, Microsoft Azure and the Google Compute Cloud); (2) as a result, Cloudera was experiencing extensive difficulty obtaining new customers willing to adopt its Hadoop-based platform; (3) the Company's "land and expand" model was an ineffective attempt to grow profits, in reality, few of Cloudera's existing customers had interest in the additional products that Cloudera was offering; (4) consequently, the Company expended a growing amount of funds on sales and marketing; (5) due to the foregoing, Cloudera could not generate annual positive cash flows; (6) the main reason for the Hortonworks Merger was to acquire Hortonworks' customers because Cloudera had difficulty generating organic growth; (7) the touted benefits of the Hortonworks Merger were materially overstated; and (8) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

152.    Moreover, according to Item 303, it was mandatory for the 2018 10-K to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expect will have material favorable impact on net sales or revenues or income from continuing operations." Likewise, according to Item 503, it is mandatory to include in the "Risk Factor" section of the registration statements and prospectuses, "a discussion of the most significant factors that make the offering speculative or risky[]" and to "set forth each risk factor under a subcaption that adequately describes the risk." The Individual

Defendants violated Item 303 because they failed to disclose the facts in the aforementioned paragraph. These facts were "known trends" and "uncertainties" that were likely to, and did, have a material unfavorable impact on Cloudera's revenues and income from continuing operations. The Individual Defendant's failure to disclose the facts in the aforementioned paragraph also violated Item 503 because these facts were not properly disclosed, or disclosed at all, yet they were "the most significant factors that make the offering speculative or risky."

### *January 3, 2019 Press Release*

153.    On January 3, 2019, the Company issued a press release (the "January 2019 Merger Close Press Release") that reported the close of the Hortonworks Merger. Defendant Reilly stated, "Today, we start an exciting new chapter for Cloudera as we become the leading enterprise data cloud provider."

### *March 13, 2019 Press Release and Earnings Call*

154.    On March 13, 2019, the Company issued a press release that reported Cloudera's fiscal year 2019 fourth quarter financial results ("4Q19") and full year financial results for fiscal year 2019 for the year ended January 31, 2019 ("Full Year 19") (the "4Q19 and Full Year 19 Press Release"). The 4Q19 and Full Year 19 Press Release stated that for 4Q19, total revenues were $144.5 million and subscription revenues were $123 million.  Nevertheless, the press release issued weak counsel for the first quarter of the 2020 fiscal year for the period ended April 30, 2019 ("1Q20'), which was the first fiscal quarter after the Hortonworks Merger. For 1Q20, the Company only expected total revenue in the range of $187 million to $190 million and subscription revenues in the range of $154 million to $156 million. Additionally, the Company's prediction for Full Year 20 was disappointing. The total revenue prediction for the full 2020 fiscal year ("Full Year 20") was between $835 million and $855 million and subscription revenues to be between $695 million to $705 million. Further, the press release revealed anticipated negative operation cash flow in the range of $30 million to $40 million for the year.

155.    The same day, March 13, 2019, Cloudera hosted an earnings call to discuss the financial results for its 4Q19 and Full Year 19 with investors (the "4Q19 and Full Year 19 Earnings Call"). The 4Q19 and Full Year 19 Earnings Call, revealed that due to purchase price accounting adjustments and a

$28 million write-down of "deferred commission expenses[,]" the (merged) Company would have to take a $62 million "haircut." Additionally, Defendant Frankola announced a shift in the Company's billing cycles. He stated, that a "shift in billing practices will reduce billings and cash flow by approximately $125 million in fiscal year '20."

156. Even so, the Individual Defendants disregarded the aforementioned disappointing financial information and continued to represent that the Company was succeeding. Defendant Frankola during the 4Q19 and Full Year 19 Earnings Call stated, that the Company "anticipate[ed] significant improvements in R&D, sales and marketing and GNA expense rations aw we complete our merger synergy actions." Likewise, Defendant Reilly claimed, that "Merger integration is going well and ahead of schedule." When asked about competitive concerns, such as Amazon, Defendant Reilly stated, "we feel very strong that market is moving in our direction around the hybrid multi-cloud, and then our functionality is best-in-class."

157. On this news, Cloudera's common stock fell $2.90 on abnormally high volume, from closing on March 13, 2019 at $14.61 to close on March 14, 2019 at $11.71.

### May 10, 2019 Proxy Statement

158. On May 10, 2019, the Company filed its 2019 Proxy Statement. Defendants Reilly, Cole, Hammonds, Stankey and Schooler solicited the 2019 Proxy Statement which contained material misstatements and omissions.[8]

159. The 2019 Proxy Statement stated, that the Company has a Code of Business Conduct and Ethics (the Code of Conduct) which is posted on the Company's website. The Code of Conduct stated that it is "applicable to every Cloudera employee and officer and every member of the Board."

160. The 2019 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as evident by the numerous false and misleading statements alleged herein, the insider trading engaged in by two of the Individual Defendants, and the Individual Defendant's failures to report violations of the Code of Conduct.

---

[8] Plaintiff's allegations with respect to the misleading statements in the 2019 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud.

161.    The Individual Defendants also caused the 2019 Proxy Statement to be false and misleading with regard to executive compensation in that they purported to employ "pay-for-performance" elements, including equity awards designed to "mak[e] a substantial portion of each executive officer's target total direct compensation dependent upon our stock price and/or total stockholder return" while failing to disclose that the Company's share price was artificially inflated as a result of false and misleading statements alleged herein.

162.    The 2019 Proxy Statement failed to disclose, *inter alia*, that: (1) Cloudera was experiencing extensive difficulty obtaining new customers willing to adopt its Hadoop-based platform; (2) as such, the Company needed to increase spending on sales and marketing; (3) Cloudera could not generate annual positive cash flows due to decreased growth opportunities; and (4) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

### **The Truth Fully Emerges**

#### *June 5, 2019 Press Release and Earnings Call*

163.    On June 5, 2019, after the close of market, the Company issued a press release that reported Cloudera's fiscal year 2020 first quarter financial results for the period ended April 30, 2019 ("1Q20") (the "1Q20 Press Release"). Though the Individual Defendants stated that the Company's first quarter total revenue was $187.5 million, the Individual Defendants further stated that some customers elected to "postpone renewal and expansion" of their subscription agreements. Further, announced in the 1Q20 Press Release was the huge increase in the Company's losses from operations. The 1Q20 Press Release stated, in relevant part, "GAAP loss from operations for the first quarter of fiscal 2020 was $103.8 million, compared to a GAAP loss from operations of $51.7 million for the first quarter of fiscal 2019." The Company's losses from operations approximately doubled from 1Q19 to 1Q20.

164.    The same day, June 5, 2018, Cloudera hosted an earnings call to discuss its 1Q20 financial results with investors (the "1Q20 Earnings Call"). During the 1Q20 Earnings Call, Defendant Frankola stated that the Company's highest-spending customers were basically flat in 1Q20, the middle-spending customers sequentially declined and further, it was undergoing an elevated dollar churn rate of

16%. In other words, Cloudera was suffering and losing business despite the Hortonworks Merger, its boasted "land and expand" plan, and, also, in spite of the fact that the Individual Defendants spent $119 million on sales and marketing during the quarter. The Company also reduced their total revenue prediction for the 2020 fiscal year by $90 million and reduced their prediction of recurring revenue growth from their original 18% to 20% prediction to now only 0% to 10% for the year. Further, the Individual Defendants increased their prediction, by nearly double, for the amount of negative cash flow the Company was going to experience for the 2020 fiscal year. Lastly, the Individual Defendants announced the, abrupt, resignation of the Company's CEO, Defendant Reilly.

165.    Analysts on the June 2019 Earnings Call questioned the reason behind the sharp decrease in number and business, one analyst asked, "So, is there any sense that customers are simply migrating to a different form of data architecture?"

166.    The reaction by analysts to the Cloudera's 1Q20 results severely injured the Company. In reaction to the 1Q20 results, one analyst, Needham, downgraded Cloudera's stock from "Strong Buy" to "Hold" and referred to the 1Q20 results as a "thesis changer." Likewise, another analyst, Stifel, stated that Cloudera's cut to guidance was "one of the deepest cuts we can remember in the software space since the dot.com meltdown."

167.    On this news, Cloudera's common stock fell $3.59 on abnormally high volume, from closing on June 5, 2019 at $8.80 to close on June 6, 2019 at $5.21.

## DAMAGES TO CLOUDERA

168.    As a direct and proximate result of the Individual Defendants' conduct, Cloudera has lost and expended, and will lose and expend, many millions of dollars.

169.    Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against the Company, its former CEO, its CFO and its co-founder and CSO and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

170.    Additionally, these expenditures include, but are not limited to, handsome compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company,

including bonuses tied to the Company's attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

171.    As a direct and proximate result of the Individual Defendants' conduct, Cloudera has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

172.    Plaintiff brings this action derivatively and for the benefit of Cloudera to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Cloudera, waste of corporate assets, unjust enrichment, and violations of Sections 14(a) of the Exchange Act, as well as the aiding and abetting thereof.

173.    Cloudera is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

174.    Plaintiff is, and has continuously been at all relevant times, a shareholder of Cloudera. Plaintiff will adequately and fairly represent the interests of Cloudera in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

175.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

176.    A pre-suit demand on the Board of Cloudera is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following ten individuals: Defendants Cole, Bearden, Cormier, Fenton, Hammonds, Klausmeyer, Schooler, and Stankey (the "Director-Defendants"); and non-defendants Nicholas Graziano, and Jesse Lynn (together with the Director-Defendants, the "Directors"). Plaintiff needs only to allege demand futility as to five of the ten Directors who were on the Board at the time this action was commenced.

177.    Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, while one of them engaged in insider sales based on material non-public information, netting proceeds of over $17.8 million in proceeds, which renders him unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

178.    In complete abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was, inter alia, intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

179.    Additional reasons that demand on Defendant Cole is futile follow. Defendant Cole has served as a Company director since September 2014 and has served as Chairman of the Board since January 3, 2019. He currently serves as the Company's CEO. Thus, he is a non-independent director. The Company provides Defendant Cole with his principal occupation, and he receives handsome compensation, including $303,749 during the fiscal year ended January 31, 2019 and an additional monthly stipend of $40,000 as of July 1, 2019 in connection with his position as CEO of the Company. He also serves as a member of the Compensation Committee and Nominating and Governance Committee. As a Company director he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. His insider sale before the fraud was exposed, which yielded at least $17.8 million in proceeds, demonstrates his motive in facilitating and participating in the fraud. Furthermore, Defendant Cole signed, and thus personally made the false and misleading statements in the 2018 10-K.

1
2
For these reasons, too, Defendant Cole breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

3
4
5
6
7
8
9
10
11
12
13
180.    Additional reasons that demand on Defendant Hammonds is futile follow. Defendant Hammonds has served as a Company director since March 2017 and serves as Chairman of the Nominating and Governance Committee.   Defendant Hammonds receives handsome compensation, including $276,249 during the fiscal year ended January 31, 2019. As a long-time Company director she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. Furthermore, Defendant Hammonds signed, and thus personally made the false and misleading statements in, the 2018 10-K. For these reasons, too, Defendant Hammonds breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

14
15
16
17
18
19
20
21
22
23
24
25
181.    Additional reasons that demand on Defendant Schooler is futile follow. Defendant Schooler has served as a Company director since December 2017. As the Company admits, she is a non-independent director. For example, Defendant Schooler is an employee of Intel Corporation and owns Intel Corporation stock and Cloudera "entered into strategic relationships and/or customer relationships with Intel Corporation" hence, Defendant Schooler is not an independent or disinterested director.  As a Company director she conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded her duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded her duties to protect corporate assets. Defendant Schooler signed, and thus personally made the false and misleading statements, in the 2018 10-K. For these reasons, too, Defendant Schooler breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

26
27
28
182.    Additional reasons that demand on Defendant Stankey is futile follow. Defendant Stankey has served as a Company director since February 2017 and serves Chairman of the

Compensation Committee and serves as a member of the Audit and Compensation Committee. Defendant Gaither receives handsome compensation, including $275,597 during the fiscal year ended January 31, 2019. As a long-time Company director he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Stankey signed, and thus personally made the false and misleading statements, in the 2018 10-K. For these reasons, too, Defendant Stankey breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

183.    Additional reasons that demand on Defendants Bearden, Cormier, Fenton, and Klausmeyer (the "Hortonworks Directors") are futile follow. Each of the Hortonworks Directors were parties to a material agreement with the Company by which they were appointed to their respective positions at Cloudera. As part of the Hortonworks Merger, the Hortonworks Directors received certain stock options in exchange for options to acquire Hortonworks common stock at specified prices. Moreover, as the Company admits in its 2019 Proxy Statement, Defendant Bearden, as the former CEO of Hortonworks, is a non-independent director of the Company. The Hortonworks Directors served on the Board during the time the false and misleading statements were made. As the subject matter of many of the false and misleading statements involved the Hortonworks Merger, it is unlikely that the Hortonworks Directors would be able to consider a demand against themselves or the rest of the Individual Defendants due to their business relationship with the Company and Hortonworks. Furthermore, the Hortonworks Directors failed to exercise their oversight responsibilities in connection with the respective Board committees they served on during the Relevant Period. For these reasons too, they are neither disinterested nor independent, and thus demand upon them is futile and, therefore, excused.

184.    Additional reasons that demand on the Board is futile follow.

185.    As described above, one of the Director-Defendants on the Board directly engaged in insider trading, in violation of federal law. Director-Defendant Cole received proceeds of over $17.8

million as a result of insider transactions. These aforementioned transactions were executed during the period when the Company's stock price was artificially inflated due to the false and misleading statements alleged herein. Therefore, demand in this case is futile as to him, and thus excused.

186. Demand in this case is excused because the Director-Defendants, all of whom are named as defendants in this action, control the Company and are beholden to each other. The Director-Defendants have longstanding business and personal relationships with each other and the other Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders. Thus, any demand on the Directors would be futile.

187. In violation of the Code of Conduct, the Director-Defendants conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets and violations of the Exchange Act. In violation of the Code of Conduct, the Directors failed to comply with the law. Thus, the Directors face a substantial likelihood of liability and demand is futile as to them.

188. Cloudera has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director-Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Cloudera any part of the damages Cloudera suffered and will continue to suffer thereby. Thus, any demand upon the Directors would be futile.

189. The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment

about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

190.    The acts complained of herein constitute violations of fiduciary duties owed by Cloudera officers and directors, and these acts are incapable of ratification.

191.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Cloudera. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of Cloudera, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is futile and, therefore, excused.

192.    If there is no directors' and officers' liability insurance, then the Directors will not cause Cloudera to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

193.    Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least five of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

### Against Individual Defendants for Violations of Section 14(a) of the Exchange Act

194.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

195.    The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual

Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

196.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

197.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

198.    Under the direction and watch of the Directors, the 2018 Proxy Statement and the 2019 Proxy Statement failed to disclose, *inter alia*, that: (1) Cloudera was experiencing extensive difficulty obtaining new customers willing to adopt its Hadoop-based platform; (2) as such, the Company needed to increase spending on sales and marketing; (3) Cloudera could not generate annual positive cash flows due to decreased growth opportunities; and (4) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

199.    The Individual Defendants also caused the 2018 Proxy Statement and 2019 Proxy Statement to be false and misleading with regard to executive compensation in that they purported to employ "pay-for-performance" elements, including equity awards designed to "mak[e] a substantial portion of each executive officer's target total direct compensation dependent upon our stock price and/or total stockholder return" while failing to disclose that the Company's share price was artificially

inflated as a result of false and misleading statements made by the Individual Defendants as alleged herein, and therefore any compensation based on the Company's financial performance was artificially inflated.

200.    The 2018 Proxy Statement and 2019 Proxy Statements also made references to the Code of Conduct. The Code of Conduct required the Company and the Individual Defendants to abide by relevant laws and regulations, make accurate and non-misleading public disclosures, and not engage in insider trading. By engaging issuing false and misleading statements to the investing public and insider trading, the Individual Defendants violated the Codes. The 2018 Proxy Statement and 2019 Proxy Statement failed to disclose these violations and also failed to disclose that the Codes' terms were being violated.

201.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2018 Proxy Statement and 2019 Proxy Statement were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2018 Proxy Statement and 2019 Proxy Statement, including, but not limited to, election of directors, ratification of an independent auditor, and the approval of executive compensation.

202.    The false and misleading elements of the 2018 Proxy Statement led to the re-election of Defendants Reilly, Olson, Cole, Hammonds, Li, Schooler, Sordello and Stankey which allowed them to continue breaching their fiduciary duties to Cloudera.

203.    The false and misleading elements of the 2019 Proxy Statement led to the re-election of Defendants Reilly, Cole, Hammonds, Schooler and Stankey, which allowed them to continue breaching their fiduciary duties to Cloudera.

204.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2018 Proxy Statement and the 2019 Proxy Statement.

205.    Plaintiff on behalf of Cloudera has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Breach of Fiduciary Duties

206.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

207.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Cloudera's business and affairs.

208.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

209.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Cloudera.

210.    In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

211.    In further breach of their fiduciary duties owed to Cloudera, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (1) Cloudera was experiencing extensive difficulty obtaining new customers willing to adopt its Hadoop-based platform; (2) as such, the Company needed to increase spending on sales and marketing; (3) Cloudera could not generate annual positive cash flows due to decreased growth opportunities; and (4) the Company failed to maintain internal controls. As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

212.    The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

213.    In breach of their fiduciary duties, two of the Individual Defendants engaged in lucrative insider sales while the price of the Company's common stock was artificially inflated due to the false and misleading statements of material fact discussed herein.

214.    The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and disguising insider sales.

215.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities and engaging in insider sales. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

216.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

217.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Cloudera has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

218.    Plaintiff on behalf of Cloudera has no adequate remedy at law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CLAIM

### Against Individual Defendants for Unjust Enrichment

219.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

220.   By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Cloudera.

221.   The Individual Defendants either benefitted financially from the improper conduct and their making lucrative insider sales or received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar compensation from Cloudera that was tied to the performance or artificially inflated valuation of Cloudera, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

222.   Plaintiff, as a shareholder and a representative of Cloudera, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

223.   Plaintiff on behalf of Cloudera has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

224.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

225.   As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

Verified Shareholder Derivative Complaint

226.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

227.    Plaintiff on behalf of Cloudera has no adequate remedy at law.

## PRAYER FOR RELIEF

228.    FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Cloudera, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Cloudera;

(c)    Determining and awarding to Cloudera the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing Cloudera and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Cloudera and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Cloudera to nominate at least five candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)    Awarding Cloudera restitution from the Individual Defendants, and each of them;

        (f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

        (g)     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: September 3, 2019                Respectfully submitted,

                                **THE ROSEN LAW FIRM, P.A.**

                                /s/Laurence M. Rosen
                                Laurence M. Rosen (SBN 219683)
                                355 South Grand Avenue, Suite 2450
                                Los Angeles, CA 90071
                                Telephone: (213) 785-2610
                                Facsimile: (213) 226-4684
                                Email: lrosen@rosenlegal.com

                                **THE BROWN LAW FIRM, P.C.**
                                Timothy Brown
                                240 Townsend Square
                                Oyster Bay, NY 11771
                                Telephone: (516) 922-5427
                                Facsimile: (516) 344-6204
                                Email: tbrown@thebrownlawfirm.net

                                *Counsel for Plaintiff*

# **VERIFICATION**

I, Andrew Chen am a plaintiff in the within action.  I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _th day of _____, 2019.

8/31/2019

Andrew Chen